MCH



U.S. Department of Justice

United States Attorney
District of Maryland
Northern Division

---

Rod J. Rosenstein
United States Attorney

Keri L. Borzilleri
Special Assistant United States Attorney

36 South Charles Street
Fourth Floor
Baltimore, Maryland 21201

DIRECT: 410-209-4991
MAIN: 410-209-4800
FAX: 410-962-0717

April 24, 2017

**Via E-mail and U.S. Mail**

Christopher Purpura, Esq.
Law Office of Purpura & Purpura
8 E. Mulberry Street
Baltimore, MD 21202

FILED U.S. DISTRICT COURT DISTRICT OF MARYLAND
2018 MAR -8 PM 4:52
CLERK'S OFFICE AT BALTIMORE
BY ___ DEPUTY

Re:   *United States v. Alexandra Brooke Kastner*

RDB18-050

Dear Mr. Purpura:

This letter confirms the plea agreement which has been offered to the Defendant by the United States Attorney's Office for the District of Maryland ("this Office"). If the Defendant accepts this offer, please have her execute it in the spaces provided below. If this offer has not been accepted by May 15, 2017 it will be deemed withdrawn. The terms of the agreement are as follows:

<u>Offense of Conviction</u>

1.   The Defendant agrees to waive indictment and plead guilty to Count One of the Information that will be filed against her, which will charge her with Distribution of Heroin, a schedule I controlled substance, in violation of 21 U.S.C. § 841 (a)(1). The Defendant admits that she is, in fact, guilty of that offense and will so advise the Court.

<u>Elements of the Offenses</u>

2.   The elements of the offense to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows:

That on or about the date in the information, the defendant knowingly, intentionally, and unlawfully, distributed, delivered, or transferred a quantity of a mixture or substance containing a detectible amount of heroin, a schedule I controlled substance, to another.

## Penalties

3.  The maximum sentence provided by statute for the offense to which the Defendant is pleading guilty are as follows: twenty years imprisonment; at least three years, and no more than three years of supervised release; and a maximum fine of $1,000,000. In addition, the Defendant must pay $100 as a special assessment pursuant to 18 U.S.C. § 3013, which will be due and should be paid at or before the time of sentencing. This Court may also order her to make restitution pursuant to 18 U.S.C. §§ 3663, 3663A, and 3664.[1] If a fine or restitution is imposed, it shall be payable immediately, unless, pursuant to 18 U.S.C. § 3572(d), the Court orders otherwise. The Defendant understands that if she serves a term of imprisonment, is released on supervised release, and then violates the conditions of his supervised release, her supervised release could be revoked – even on the last day of the term – and the Defendant could be returned to custody to serve another period of incarceration and a new term of supervised release. The Defendant understands that the Bureau of Prisons has sole discretion in designating the institution at which the Defendant will serve any term of imprisonment imposed.

## Waiver of Rights

4.  The Defendant understands that by entering into this agreement, she surrenders certain rights as outlined below:

    a.  If the Defendant had persisted in her plea of not guilty, she would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

    b.  If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

    c.  If the Defendant went to trial, the government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the government's witnesses. The Defendant would not have

---

[1] Pursuant to 18 U.S.C. § 3612, if the Court imposes a fine in excess of $2,500 that remains unpaid 15 days after it is imposed, the Defendant shall be charged interest on that fine, unless the Court modifies the interest payment in accordance with 18 U.S.C. § 3612(f)(3).

to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses in her defense, however, she would have the subpoena power of the Court to compel the witnesses to attend.

d. The Defendant would have the right to testify in her own defense if she so chose, and she would have the right to refuse to testify. If she chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from her decision not to testify.

e. If the Defendant were found guilty after a trial, she would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges against her. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

f. By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the Defendant understands that she may have to answer the Court's questions both about the rights she is giving up and about the facts of her case. Any statements the Defendant makes during such a hearing would not be admissible against her during a trial except in a criminal proceeding for perjury or false statement.

g. If the Court accepts the Defendant's plea of guilty, there will be no further trial or proceeding of any kind, and the Court will find her guilty.

h. By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status. The Defendant recognizes that if she is not a citizen of the United States, pleading guilty may have consequences with respect to her immigration status. Under federal law, conviction for a broad range of crimes can lead to adverse immigration consequences, including automatic removal from the United States. Removal and other immigration consequences are the subject of a separate proceeding, however, and the Defendant understands that no one, including her attorney or the Court, can predict with certainty the effect of a conviction on immigration status. Defendant nevertheless affirms that she wants to plead guilty regardless of any potential immigration consequences.

Advisory Sentencing Guidelines Apply

5. The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. §§ 3551-3742 (excepting 18 U.S.C. §§ 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998. The Defendant further understands that the Court will impose a sentence

pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

### Factual and Advisory Guidelines Stipulation

6.    (a).    The Defendant and this Office agree that the base offense level for a violation of 21 U.S.C. § 841(b)(1)(C) is a **level 12**. However, the defendant engaged in the distribution of heroin and that that distribution of heroin resulted in the death of another person. Therefore, the base offense level is **38** (U.S.S.G. § 2D1.1(a)(2)), or alternatively, an upward departure to level **38** (pursuant to U.S.S.G. 5K2.1) is appropriate because death resulted from the defendant's offense conduct.

(b).    This Office does not oppose a two-level reduction in the Defendant's adjusted offense level, based upon the Defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for her criminal conduct. This Office agrees to make a motion pursuant to § 3E1.1(b) for an additional one-level decrease in recognition of the Defendant's timely notification of her intention to plead guilty. This Office may oppose *any* adjustment for acceptance of responsibility if the Defendant (a) fails to admit each and every item in the factual stipulation; (b) denies involvement in the offense; (c) gives conflicting statements about her involvement in the offense; (d) is untruthful with the Court, this Office, or the United States Probation Office; (e) obstructs or attempts to obstruct justice prior to sentencing; (f) engages in any criminal conduct between the date of this agreement and the date of sentencing; or (g) attempts to withdraw her plea of guilty. Accordingly, the ANTICIPATED adjusted offense level is **35**.

7.    The defendant understands that there is no agreement as to her criminal history or criminal history category, and that her criminal history could alter her offense level if she is a determined to be a career offender as defined in U.S.S.G. §4B1.1, such a finding may affect the resulting offense level and advisory guidelines range.

8.    With respect to the calculation of criminal history, and the calculation of the advisory guidelines range, no other offense characteristics, sentencing guidelines factors, potential departures or adjustments set forth in the United States Sentencing Guidelines will be raised or are in dispute. The parties reserve the right to bring to the Court's attention at the time of sentencing, and the Court will be entitled to consider, all relevant information concerning the Defendant's background, character, and conduct, including but not limited to the Defendant's drug dealing activities, as well as any other factors relevant to the application of 18 U.S.C. § 3553(a).

### Obligations of the United States Attorney's Office

9.    This office reserves the right to bring to the Court's attention all information with respect to the Defendant's background, character and conduct which this Office deems relevant to sentencing, including the conduct that is the subject of the Information.

4

## Waiver of Appeal

10.  In exchange for the concessions made by this Office and the Defendant in this plea agreement, this Office and the Defendant waive their rights to appeal as follows:

   a.  The Defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or otherwise, to appeal the Defendant's conviction;

   b.  The Defendant and this Office knowingly waive all rights, pursuant to 18 U.S.C. § 3742 or otherwise, to appeal whatever sentence is imposed (including the right to appeal any issues that relate to the establishment of the advisory guidelines range, the determination of the defendant's criminal history, the weighing of the sentencing factors, and the decision whether to impose and the calculation of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release).

   c.  Nothing in this agreement shall be construed to prevent the Defendant or this Office from invoking the provisions of Federal Rule of Criminal Procedure 35(a), or from appealing from any decision thereunder, should a sentence be imposed that resulted from arithmetical, technical, or other clear error; and

   d.  The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

## Obstruction or Other Violations of Law

11.  The Defendant agrees that she will not commit any offense in violation of federal, state or local law between the date of this agreement and her sentencing in this case. In the event that the Defendant (i) engages in conduct after the date of this agreement which would justify a finding of obstruction of justice under USSG § 3C1.1, or (ii) fails to accept personal responsibility for her conduct by failing to acknowledge her guilt to the probation officer who prepares the Presentence Report, or (iii) commits any offense in violation of federal, state or local law, then this Office will be relieved of its obligations to the Defendant as reflected in this agreement. Specifically, this Office will be free to argue sentencing guidelines factors other than those stipulated in this agreement, and it will also be free to make sentencing recommendations other than those set out in this agreement. As with any alleged breach of this agreement, this Office will bear the burden of convincing the Court of the Defendant's obstructive or unlawful behavior and/or failure to acknowledge personal responsibility by a preponderance of the evidence. The Defendant

acknowledges that she may not withdraw her guilty plea because this Office is relieved of its obligations under the agreement pursuant to this paragraph.

### Court Not a Party

12. The Defendant expressly understands that the Court is not a party to this agreement. In the federal system, sentence is imposed by the Court, and the Court is under no obligation to accept this plea agreement. In particular, the Defendant understands that neither the United States Probation Office nor the Court is bound by the stipulation set forth above, and that the Court will, with the aid of the Presentence Report, determine the facts relevant to sentencing. The Defendant understands that the Court cannot rely exclusively upon the stipulation in ascertaining the factors relevant to the determination of sentence. Rather, in determining the factual basis for the sentence, the Court will consider the stipulation, together with the results of the presentence investigation, and any other relevant information. The Defendant understands that the Court is under no obligation to accept this Office's recommendations, and the Court has the power to impose a sentence up to and including the statutory maximum stated above. The Defendant understands that if the Court ascertains factors different from those contained in the stipulation set forth above, or if the Court should impose any sentence up to the maximum established by statute, the Defendant cannot, for that reason alone, withdraw her guilty plea, and will remain bound to fulfill all of his obligations under this agreement. The Defendant understands that neither the prosecutor, her counsel, nor the Court can make a binding prediction, promise, or representation as to what guidelines range or sentence the Defendant will receive. The Defendant agrees that no one has made such a binding prediction or promise.

### Entire Agreement

13. This letter supersedes any prior understandings, promises, or conditions between this Office and the Defendant and constitutes the complete plea agreement in this case. The Defendant acknowledges that there are no other agreements, promises, undertakings or understandings between the Defendant and this Office other than those set forth in this letter and none will be entered into unless in writing and signed by all parties.

If the Defendant fully accepts each and every term and condition of this agreement, please sign and have the Defendant sign the original and return it to me promptly.

Very truly yours,

Rod J. Rosenstein
United States Attorney

By: _____
Keri L. Borzilleri
Special Assistant United States Attorney
Sean R. Delaney
Assistant United States Attorney

6

I have read this agreement and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney, and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

**6/05/2017**
Date

Alexandra Brooke Kastner

I am Alexandra Brooke Kastner's attorney. I have carefully reviewed every part of this agreement with her. She advises me that she understands and accepts its terms. To my knowledge, her decision to enter into this agreement is an informed and voluntary one.

6/5/2017
Date

Christopher Purpura, Esq.

7

## ATTACHMENT A

## STIPULATION OF FACTS

The parties stipulate and agree that if this case had proceeded to trial, the government would have proven the following facts beyond a reasonable doubt. The parties also stipulate and agree that the following facts do not encompass all of the evidence that would have been presented had this matter proceeded to trial.

On or about March 22, 2016, the Defendant, Alexandra Brooke Kastner, did distribute heroin, a schedule I controlled substance to John Thomas Hopkins. The evidence establishing the distribution includes Facebook messages between Kastner and Hopkins in which Hopkins agrees to pay Kastner $100 total, $50 for heroin and $50 for gas money in exchange for Kastner driving from Frederick to Hagerstown to deliver the heroin, cell tower records indicating that Kastner traveled from Frederick to Hagerstown during the time of their Facebook communications, and prior electronic communications revealing that Kastner and Hopkins were in contact with one another and had previously engaged in a heroin transaction.

On March 22, 2016, at approximately 6:00 a.m., John Thomas Hopkins (hereinafter "Hopkins") was found by his fiancé, Witness 1, dead from an apparent overdose on the kitchen floor of his residence at 19916 Thorngrove Court, Hagerstown, Maryland. Drug paraphernalia, including a metal spoon and a cigarette filter, located at the residence indicated that Hopkins had injected a substance into his body. The Western Maryland Regional Crime Laboratory analyzed the residue found on the spoon and the cigarette filter and concluded that it was heroin and Fentanyl. Reports from the Washington County Narcotics Task Force indicate that Witness 1 last saw and spoke to Hopkins at approximately 12:30 a.m., on March 22, 2016.

During the course of the investigation, it was revealed that Hopkins did not have a cell phone and therefore either borrowed Witness 1's cellphone or used the home phone to make calls. Investigators inspected Hopkins' home phone and observed the number (240) 440-XXXX in the caller ID. Subscriber records from AT&T indicated that the phone number (240) 440-XXXX is registered to Alexandra Kastner at 2227 West Greenleaf Drive, Frederick, Maryland, which is Kastner's known address. Toll records show a phone call between this number and Hopkins' home phone number on March 22, 2016, at approximately 12:25 a.m., that lasted approximately two seconds.

Witness 1 later reported to Washington County deputies that she observed a conversation on Hopkins' Facebook account that indicated a narcotics transaction with an Alex Stribling, also known as Alexandra Kastner, utilizing phone number (240) 440-XXXX. Witness 1 indicated that the last message was at approximately 12:30 a.m. on March 22, 2016.

On April 7, 2016, the Honorable William Nicklas issued a State of Maryland search warrant for the Facebook account of Kastner. As a result, investigators reviewed Kastner's Facebook account which revealed a conversation starting on March 21, 2016, at approximately

8

7:40 p.m., and ending on March 22, 2016 at 1:33 a.m.  Specifically, the conversation revealed that Kastner and Hopkins agreed to meet in order for Hopkins to purchase $50 worth of heroin from Kastner.  In addition, Hopkins agreed to give Kastner $50 for gas as a delivery fee.  Specifically, Hopkins stated "if u can bring me 50 ill give you 50 in gas or whatever.  A delievery fee."  Kastner agreed to travel to Hopkins if he was positive he wanted "it" and "positive about the 50 for gas."  Hopkins replied, "yes got it.  100%."  Kastner then asked for the address to which Hopkins replied, "19916 Thorngrove ct. Hagerstown md."  Kastner then told Hopkins that she would let him know when she was on her way.  Hopkins advised Kastner that he had to go to the ATM and Kastner told him to let her know when he is back from the ATM and she would head out.  A short time later Hopkins advised Kastner that he "got it" and asked her if she could "still come out."  Kastner replied that she could come now, confirmed the amount of money Hopkins had and stated that she will "weigh it now n leave."  Kastner then told Hopkins she was on her way, but stated that her phone was out of data and asked for a number to call in case of an emergency.  Hopkins responded that he had to find the house phone and asked for Kastner's number stating that he would call her from the house phone.  Kastner responded "240440XXXX."  A short time later Kastner told Hopkins she was 3 minutes away to which Hopkins responded that he would go outside and would be on the front porch.  Shortly thereafter Kastner stated, "I'm hre."  Moments later Kastner stated, "be careful k.  3 ppl od a few days ago but this stuff is new.  So it might b ok just do a little first."

   Investigators reviewed cell tower information from March 21 and March 22, 2016, which corroborates that Kastner's cell phone traveled from Frederick to Hagerstown, Maryland during the time frame of the Facebook messages.  Specifically, the cell tower records indicate that Kastner's cell phone moved from a tower located in Frederick, Maryland, to towers along the route of travel to Hagerstown, Maryland, and finally to a tower located in close proximity to Hopkins' house at approximately 1:29 a.m. on March 22, 2016.

   On May 31, 2016, FPD Officers served a search warrant at 2227 West Greenleaf Drive, Fredrick, Maryland, Kastner's residence.  As a result of the search and seizure warrant, investigators seized Kastner's cell phone and obtained a search and seizure warrant.  Investigators located a series of text messages between Kastner and Hopkins, which occurred on March 12, 2016, between approximately 4:15 and 4:17 p.m.  The substance of these messages indicate that Hopkins likely purchased an unknown quantity of heroin from Kastner at that time.

   On April 8, 2016, The Office of the Chief Medical Examiner for the State of Maryland concluded that the cause of death for John Hopkins was heroin and Fentanyl intoxication.